UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELIZABETH BAILEY,

    Plaintiff,

v.                                                    CASE NO. 3:21-cv-1193-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on February 25, 2021, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from January 14, 2019, the alleged disability onset date, through April 20, 2021, the date of the ALJ's decision.[2] (Tr. 11-21, 86-

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15.)

[2] Plaintiff had to establish disability on or before March 31, 2022, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 11.) The earliest time that SSI benefits are payable is the month following the month in

103, 262, 264.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery*

---

which the application was filed.  *See* 20 C.F.R. § 416.335.  Plaintiff's SSI application was filed on January 3, 2020.  (Tr. 11.)

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.     Discussion

### A.     Issues on Appeal

Plaintiff raises two issues on appeal.  First, she argues that the ALJ's hypothetical question to the Vocational Expert ("VE") did not include all of her limitations.  (Doc. 19 at 8.)  Plaintiff explains:

> In this case[,] the ALJ disregarded the opinions from Dr. [Stephen] Alexander because the treatment records were before the alleged date of disability, and he did not mention any records from Dr. [John E.] Carey, the plaintiff's pain management physician.  The treatment records were both caused by the car accident in June 2018.
>
> In this case[,] [the ALJ] found the opinions of Dr. [Elaine] Holmes unpersuasive even though it [sic] was supported by direct observations of the [P]laintiff.  Instead, the ALJ found the opinions of the State Agency physicians, Dr. Steven Arkin and Dr. Paul Sporn persuasive and [sic] they stated that the [P]laintiff could perform at levels consistent with a reduced range of light work. (Tr-18-19 [sic])
>
> . . .
>
> In the evaluation from Dr. Sporn[,] he refers to a report dated July 21, 2020; the evaluation of the right shoulder noted right shoulder tenderness directly over the humerus fracture minimal today.  Right shoulder range of motion was noted to be limited in all directions. The left shoulder examination was normal. The humerus appeared to be healing normally. (Tr-146 [sic])
>
> . . .

3

> The ALJ relied on the opinions of Dr. Sporn but did not include any limitations regarding the right humerus fracture or the right shoulder injury.

(Doc. 19 at 9-10.)

Plaintiff's second argument is that the ALJ erred by not analyzing all of the medical records. (*Id.* at 10.) Plaintiff contends that the ALJ did not mention or analyze "any records or treatment from Dr. John Carey" who treated Plaintiff from July 13, 2018 until May 23, 2019. (*Id.* at 6 (citing Tr. 947-74), 10.) Plaintiff also contends that the ALJ erred by giving no weight to Dr. Alexander's opinions. (*Id.* at 10.) Plaintiff explains:

> An evaluation of Dr. Alexander's notes are [sic] important because he opined that the [P]laintiff could perform a reduced range of sedentary work, which would alter the hypothetical to the VE. Although the ALJ did mention his records[,] he stated that there [sic] were not considered because they did not pertain to the relevant time period.
>
> [Plaintiff's counsel] would argue that all [of] the treatment records in this file are from the car accident in June 2018 and Dr. Alexander was the first provider[,] and his treatment was followed by Dr. Carey. As such[,] any treatment notes from Dr. Alexander and Dr. Carey are important and should be analyzed.

(*Id.* at 10-11.) Plaintiff asks for a remand "for additional medical analysis of Drs. Carey's and Alexander's records and additional vocational analysis based on a consideration of all [of] the medical records and vocational analysis based on all limitations in the hypothetical." (*Id.* at 11.)

Defendant responds that the ALJ properly evaluated the medical

4

opinions of record, considered Plaintiff's condition as a whole, and his decision is supported by substantial evidence. (Doc. 20 at 1.) First, Defendant argues that the hypothetical question to the VE reflects all of Plaintiff's limitations that were supported by substantial evidence and that were included in the residual functional capacity ("RFC") assessment, and, as such, the hypothetical question is complete. (*Id.* at 1, 5.) Defendant explains:

> Under the governing regulations, the ALJ properly found Dr. Alexander's opinion was unpersuasive, and he addressed the supportability and consistency factors as required (Tr. 18). . . .
>
> The ALJ noted that Dr. Alexander's opinion was made on January 16, 2019, and therefore was "supported by few observations from the period under consideration" (which began on Plaintiff's alleged onset date of January 14, 2019) (Tr. 18, 475-76). The only observation of Dr. Alexander from the period under consideration was from Plaintiff's final visit on January 16, 2019 (Tr. 475). . . . The ALJ also noted that Dr. Alexander's opinion was "inconsistent with the preponderance of the evidence from the period under consideration, including the examination findings discussed . . . in the decision[] (Tr. 18).

(Doc. 20 at 9-10.)

Regarding the ALJ's evaluation of Dr. Sporn's findings, Defendant explains:

> In Dr. Sporn's summary of the medical evidence that he considered when assessing Plaintiff's functional abilities, Dr. Sporn noted that Plaintiff's right shoulder had tenderness and limited range of motion at a July 2020 examination (Tr. 146). Doc. 19 at 9. This summary of evidence was not a prior administrative medical finding that Plaintiff had a limitation related to the right shoulder. It was a summary of another doctor's objective medical evidence about tenderness and range of

5

> motion that Dr. Sporn reviewed. Dr. Sporn actually observed that the records overall showed the fractured right humerus "appears to be healing well" (Tr. 148). When Dr. Sporn made a prior administrative medical finding about Plaintiff's limitations for 12 months after Plaintiff's shoulder injury, his assessment did not include any limitation exclusive to the right upper arm/shoulder (Tr. 144-46). The only limitation found by Dr. Sporn that relates to the right arm is the limitation to lifting, carrying, pushing, or pulling at the light work exertional level that applies to both arms (Tr. 145), and the ALJ's RFC for light work fully accommodates the limitation (Tr. 16). Plaintiff appears to be under the impression that Dr. Sporn assessed additional limitations from the right humerus fracture, but he did not.
>
> . . . The ALJ found "the record does not objectively support the contention that the claimant was unable to recover normally from her humerus fracture" (Tr. 18). This is consistent with Dr. Sporn not including any specific right shoulder limitations in his RFC assessment (Tr. 144-46). Accordingly, there is no medical opinion or prior administrative medical finding in the record of Plaintiff having limitations in her right shoulder and there are no clinical findings of any right shoulder limitations lasting more than a year after Plaintiff's shoulder injury. Accordingly, Plaintiff has failed to show any error by the ALJ with respect to the ALJ not including any right upper arm limitations in the RFC.

(Doc. 20 at 12-13 (footnote omitted).)

With respect to Plaintiff's second argument, Defendant responds as

follows:

> Plaintiff states that the ALJ did not consider Dr. Alexander's records "because they did not pertain to the relevant time period." Doc. 19 at 10. Plaintiff's contention is false, for the ALJ referred to Plaintiff's reports to Dr. Alexander of spinal pain stemming from a motor vehicle accident in June 2018 as well as Dr. Alexander's finding in January 2019 that she had reached maximum medical improvement and his directions for her to obtain future care as needed and to continue with exercises at

6

> home or a local gym (Tr. 17, 475, 571-72). In addition, the ALJ referred to and evaluated Dr. Alexander's opinion (Tr. 17), as discussed above.
>
> During a six-week period from April 11, 2019[] to May 23, 2019, Dr. Carey treated Plaintiff six times (Tr. 950-71). Dr. Carey's treatment records are found at Exhibit 11F in the record (Tr. 949-71). Plaintiff contends that the ALJ "does not mention any records or treatment from Dr. John Carey," Doc. 19 at 6; however, this is belied by the citations in the decision to Dr. Carey's treatment notes (Tr. 17-18). While not referring to Dr. Carey by name in the decision, the ALJ cited to Exhibit 11F in support of a statement that Plaintiff had findings of normal strength, no focal neurological deficits, normal sensation, normal motor function, normal ambulation, and no acute distress (Tr. 17, 955-56, 966-67, 970-71).
>
> With respect to any argument that the ALJ failed to analyze all of Dr. Alexander and Dr. Carey's records in the decision, Plaintiff's argument fails. The ALJ was not tasked with discussing each of Plaintiff's medical records, as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [the] decision" provided the ALJ's decision is sufficient to enable the court to conclude that the ALJ properly considered the claimant's condition as a whole.

(Doc. 20 at 14-15.)

### B. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all of the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). With regard to medical opinions, the rules in 20 C.F.R. §§ 404.1520c, 416.920c apply to claims filed on or after March 27, 2017.[3] *See*

---

[3] The rules in 20 C.F.R. §§ 404.1527, 416.927 apply to claims filed before March 27, 2017.

7

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised rules and regulations in effect at the time of the ALJ's decision.

Under the revised rules and regulations, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in the case record, 20 C.F.R. §§ 404.1520c(b), 416.920c(b), but need not articulate how evidence from non-medical sources has been considered, 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

"When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. §§ 404.1520c(c)(1) through (c)(5), 416.920c(c)(1) through (c)(5), as appropriate.  20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1).  The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

When evaluating the persuasiveness of medical opinions, the most

important factors are supportability[4] and consistency.[5] 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). Thus, the ALJ "will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. §§ 404.1520c(c), 416.920c(c). 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As explained by another court in this District:

> Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record. In other words, the ALJ's analysis is directed to whether the medical source's opinion is *supported* by the source's own records and *consistent* with the other evidence of record—familiar concepts within the framework of social security litigation.

*Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) (emphasis in original) (report and recommendation adopted by 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)). When "two or more medical opinions . . . about the same issue are both

---

[4] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[5] "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

9

equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ will articulate how he/she considered the other most persuasive factors listed in 20 C.F.R. §§ 404.1520c(c)(3) through (c)(5), 416.920c(c)(3) through (c)(5), which include a medical source's relationship with the claimant,[6] specialization, and other factors.[7] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

### C.  The ALJ's Decision

At step two of the sequential evaluation process,[8] the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, anxiety, post-traumatic stress disorder ("PTSD"), and depression. (Tr. 14.) The ALJ found that Plaintiff's proximal humerus fracture, among other impairments, was not a severe impairment. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of

---

[6] The relationship with the claimant factor combines consideration of the following issues: the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

[7] The other factors may include: the medical source's familiarity with the other evidence in the claim; the medical source's understanding of the disability program's policies and evidentiary requirements; and the availability of new evidence that may render a previously issued medical opinion more or less persuasive. 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

[8] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform a reduced range of light work as follows:

> [T]he claimant can occasionally perform postural activities (climbing, balancing, stooping, kneeling, crouching, and crawling); [she] cannot have concentrated exposure to vibration; [she] cannot work around moving mechanical parts or at unprotected heights; [she] is limited to performing work that needs little or no judgment to do simple duties that can be learned on the job in a short time (up to and including 30 days); [she] is able to deal with the changes in a routine work setting; and [she] is able to relate adequately to supervisors with occasional coworker and general public contact.

(Tr. 16.) The ALJ stated that he had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*) The ALJ also stated that he had "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR [§§] 404.1520c and 416.920c." (*Id.*)

As part of the RFC determination, the ALJ discussed Plaintiff's testimony, the objective medical evidence, and the treating, consulting, and non-examining records and opinions of record. (Tr. 16-19.) The ALJ addressed Plaintiff's humerus fracture as follows:

> The record indicates that the claimant had a humerus fracture in March of 2020 (Exhibit 6F). Notably, the claimant's treatment

11

records indicate that by November of 2020, the claimant reported no arm pain, joint pain, or muscle weakness, and she displayed no acute distress and no extremity cyanosis or edema (Exhibit 10F). Therefore, the record does not objectively support the contention that the claimant was unable to recover normally from her humerus fracture.

(Tr. 17-18.)

With respect to the opinion evidence, the ALJ stated in relevant part:

Notably, the [ALJ] found any opinion rendered more than a short period prior to the alleged onset date unpersuasive because the remote nature of such opinions indicate, despite any consistency with the current evidence, that they have no support from evidence from the period now under consideration. Additionally, the [ALJ] gave no consideration to any opinion on an issue reserved to the Commissioner or to disability assessments or ratings from agencies or entities outside of the Social Security Administration. Furthermore, the [ALJ] did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR [§§] 404.1520b(c) and 416.920b(c).

The [ALJ] considered the opinion given by Stephen Alexander, DC (Exhibit 2F), which indicated that the claimant [could] function at levels consistent with a reduced range of sedentary work. The [ALJ] found that opinion unpersuasive because it was made on January 16, 2019 and[,] therefore[,] is supported by few observations from the period under consideration and because it is inconsistent with the preponderance of the evidence from the period under consideration, including the examination findings discussed above.

The [ALJ] also considered the opinion given by Dr. Elaine Holmes (Exhibit 4F), which stated that the claimant has no limitations with sitting, standing, walking, climbing stairs, bending, kneeling, lifting, carrying, pushing, pulling, or fine motor activity. The [ALJ] found that opinion unpersuasive even though it was supported by direct observations of the claimant because it is inconsistent with the preponderance of the evidence

12

> [which] indicates that the claimant experiences more than minimal functional limitations.
>
> The [ALJ] also considered the opinion[s] given by Dr. Steven Arkin (Exhibits 1A and 2A) and Dr. Paul Sporn (Exhibits 5A and 6A), which stated that the claimant can function at levels consistent with a reduced range of light work. The [ALJ] found those opinions persuasive because they are supported by references to specific evidence and because they are generally consistent with the preponderance of the objective findings in the record. However, the [ALJ] declined to adopt the opinions completely and restricted the claimant's exposure to hazards to accommodate any danger that might occur from periodic increases or breakthroughs of the claimant's symptoms, and the [ALJ] also thus did not adopt the opinions' assertions that the claimant can never climb ladders, ropes, or scaffolds since the hazards that might prompt those limitations are sufficiently guarded against through the [RFC] assessment that the claimant should avoid unprotected heights.

(Tr. 18-19.) The ALJ concluded that his RFC assessment was supported by the objective evidence, including "examination findings, treatment history, and reported activities." (Tr. 19.)

Then, at step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 19-20.) At the fifth and final step of the sequential evaluation process, considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as a marker (DOT No. 209.587-034), an office helper (DOT No. 239.567-010), and a photocopy machine operator (DOT No. 207.685-014). (Tr. 20-21.) Therefore, the ALJ concluded that Plaintiff was

13

not disabled from January 14, 2019 through April 20, 2021. (Tr. 21.)

### D. Analysis

The Court finds that the ALJ's decision is based on correct legal standards and is supported by substantial evidence in the record. First, contrary to Plaintiff's argument, the ALJ did not disregard Dr. Alexander's opinion of reduced range of sedentary work, but explicitly considered it and found it to be unpersuasive for reasons supported by substantial evidence in the record. Specifically, the ALJ stated that Dr. Alexander's January 16, 2019 opinion[9] was "supported by few observations from the period under consideration," which commenced on January 14, 2019, and was "inconsistent with the preponderance of the evidence from the period under consideration, including the examination findings discussed" in the decision. (Tr. 18.)

Plaintiff essentially asks the Court to reweigh the evidence, which the Court cannot do. The ALJ did not err in finding Dr. Alexander's opinion unpersuasive since the relevant period under consideration commenced just two days before the opinion was rendered, and the ALJ could rely on the unremarkable examination findings and the few positive findings in the

---

[9] On January 16, 2019, Dr. Alexander imposed the following occupational limitations: "No lifting of weight over: 10lbs, [n]o overhead reaching, [n]o repetitive stooping or bending at [the] waist, [n]o standing in [the] same position for more than 2 hours, [n]o standing [for] more than 50 minutes out of every hour and limit overhead lifting," and the following home/activity restrictions: "Limit lifting, [l]imit bending, avoid prolonged sitting, avoid prolonged standing, avoid prolonged driving, avoid prolonged walking and [n]o running." (Tr. 474-46.)

14

record.  (*See, e.g.*, Tr. 642-43 (noting a normal physical exam except for "myalgia and arthralgia in the back" and tenderness to palpation in the spine); Tr. 660-61 & 665-67 (noting a normal physical exam).)

Further, contrary to Plaintiff's position, the ALJ mentioned records from Dr. Carey in his decision and considered them in his RFC assessment and hypothetical question.  (*See* Tr. 17 (citing Exhibit 11F, among others, to show that Plaintiff's treatment records documented "normal musculoskeletal range of motion, normal strength, no focal neurological deficits, normal sensation, normal motor function, normal ambulation, and no acute distress").)  Although the ALJ did not mention Dr. Carey by name or assign any specific weight to his opinion, he was not required to do so.  It is sufficient that the ALJ considered Dr. Carey's records and his findings are supported by substantial evidence.  (*See* Tr. 955-56, 966-67 & 970-71 (noting normal musculoskeletal range of motion except in the lumbar spine, normal strength, no focal neurological deficits, normal sensation, normal motor function, normal ambulation, and no acute distress).)

Interestingly, Plaintiff also finds error in the ALJ's consideration of Dr. Holmes's consultative opinion.  Dr. Holmes opined that Plaintiff "had no limitations for sitting, standing, walking, climbing stairs, bending, kneeling, lifting, carrying, pushing or pulling" and "no fine motor activity limitations of the hands."  (Tr. 662.)  When the ALJ found Dr. Holmes's opinion

15

"unpersuasive even though it was supported by direct observations of the claimant because it [was] inconsistent with the preponderance of the evidence [which] indicate[d] that the claimant experience[d] more than minimal functional limitations" (Tr. 18-19), the ALJ was actually assessing greater limitations than Dr. Holmes opined. As such, it is unclear why Plaintiff takes issue with the ALJ's consideration of Dr. Holmes's opinion.

Finally, the ALJ did not err in his consideration of the opinions of the State agency non-examining physicians, Dr. Arkin and Dr. Sporn. On February 14, 2020, Dr. Arkin completed a Physical RFC Assessment, opining that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours and sit for six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and never climb ladders, ropes, or scaffolds. (Tr. 113-16.) On July 29, 2020, Dr. Sporn completed a Physical RFC Assessment essentially adopting Dr. Arkin's opinions on reconsideration. (Tr. 144-48.) Dr. Sporn concluded that the allegations were "partially supported by the objective medical evidence"; that the abnormalities in the cervical and lumbar spine revealed on diagnostic imaging "were not of a severe nature"; and that the claimant "was able to demonstrate a largely negative PE [physical exam]." (Tr. 148.)

The ALJ found the opinions of Drs. Arkin and Sporn "persuasive"

16

because they were "supported by references to specific evidence" and were "generally consistent with the preponderance of the objective findings in the record." (Tr. 19.) However, the ALJ "declined to adopt the opinions completely and restricted the claimant's exposure to hazards to accommodate any danger that might occur from periodic increases or breakthroughs of the claimant's symptoms" and "did not adopt the opinions' assertions that the claimant [could] never climb ladders, ropes, or scaffolds since the hazards that might prompt those limitations [were] sufficiently guarded against through the [RFC] assessment that the claimant should avoid unprotected heights." (*Id.*)

Plaintiff argues that because Dr. Sporn mentioned a follow-up note from July 21, 2020 concerning Plaintiff's right shoulder pain and proximal humerus fracture, the ALJ was supposed to include limitations regarding the right humerus fracture in the RFC and the hypothetical question to the VE. However, as Defendant points out, the findings from the July 21, 2020 follow-up note were not Dr. Sporn's, but rather they were written by Megan Hope Cagle, APRN, with the Department of Orthopedics at Shands Jacksonville. (Tr. 818.) Dr. Sporn did not seem, and was not required, to adopt any specific limitations due to Plaintiff's proximal humerus fracture just because he considered Ms. Cagle's progress note. In turn, the ALJ, who found Dr. Sporn's opinions to be persuasive in part, was also not required to adopt any

17

specific limitations due to Plaintiff's proximal humerus fracture.  Notably, the July 21, 2020 note directed Plaintiff to discontinue all bracing of the right upper extremity, to continue physical therapy for increased range of motion of the right arm, and to follow-up in six weeks.[10]  (*Id.*)

The ALJ expressly addressed Plaintiff's humerus fracture as part of his RFC determination:

> The record indicates that the claimant had a humerus fracture in March of 2020 (Exhibit 6F).  Notably, the claimant's treatment records indicate that by November of 2020, the claimant reported no arm pain, joint pain, or muscle weakness, and she displayed no acute distress and no extremity cyanosis or edema (Exhibit 10F).  Therefore, the record does not objectively support the contention that the claimant was unable to recover normally from her humerus fracture.

(Tr. 17-18.)  The ALJ's findings were supported by substantial evidence.  (*See* Tr. 884 (noting, on March 31, 2020, a diagnosis of "closed traumatic minimally displaced fracture of proximal and of right humerus with routine healing"); Tr. 920 (noting a normal musculoskeletal exam, including no cyanosis or edema).)

In sum, the ALJ properly evaluated the medical records and opinions of record, and his RFC assessment and hypothetical question were supported by

---

[10] The exam from that day showed the right shoulder tenderness directly over the humerus fracture was minimal, muscle strength was 4/5, and range of motion was reduced, and the X-ray from the same day showed that, compared to the April 9, 2020 imaging, "the comminuted proximal humerus fracture exhibit[ed] mature bony bridging callus without acute fracture or erosion."  (Tr. 824-25.)

substantial evidence.

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on March 8, 2023.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record